STEVENS *vs.* THE BANK OF CENTRAL NEW YORK and THE ILION BANK, impleaded, &c.

A prior judgment, confessed by two partners in a firm consisting of three members, for the purpose of securing a partnership debt, is a lien upon the interest of the two in the partnership property; and is entitled to priority in payment, out of the surplus moneys arising from a sale of the property under a mortgage, over subsequent judgments recovered against all the members of the firm.

In such a case the rights of the parties must be determined by the priority of their legal liens; and the holder of the prior judgment will be entitled to two thirds of the fund, and the subsequent judgment creditors to one third.

THE question presented in this case was, who was entitled to the surplus moneys arising upon a mortgage sale of real estate owned jointly by Daniel Mason, Henry C. Johnson and Peter J. Hotaling, which they purchased April 24, 1856, of John Stillwell, and for which they gave the mortgage by virtue of which the sale was made. The surplus moneys amounted to $985.07. The material facts found by the referee, and undisputed in the case, were these: On and prior to September 3, 1855, Mason and Johnson were partners in the business of distilling, under the name of D. Mason & Co. Pruyn & King had become their indorsers to the extent of $10,000, and for their indemnity as such indorsers Mason and Johnson gave them a statement dated September 3, 1855, authorizing the entry of a judgment against them for $10,000. This statement was in their own name, and did not profess to be for or in behalf of any other person. No judgment was entered on this statement until December 24, 1857, when it was entered. Sept. 5, 1855, Hotaling entered into copartnership with Mason and Johnson in the same business, and the three continued partners until January 11, 1858, under the name of D. Mason & Co., when the company failed. Hotaling, at some time in the course of the business, had notice of the judgment Mason and Johnson had given Pruyn & King, and that they indorsed for the company. Pruyn & King continued to indorse for the company until January 11, 1858. April 24, 1856, the firm,

consisting of the three, purchased the real estate in question with company funds, and it was conveyed to the three partners, and the property was used by the company in its business. Some time in Sept. 1857, Mason applied to the plaintiff to indorse for the company after P. & K., and agreed with the plaintiff that Pruyn & King should assign to him an interest in their judgment to the amount of $6000, to secure him; and on that condition the plaintiff agreed to indorse to the extent of $6000 for the company. September 10, 1857, P. & K. assigned that amount of interest in the judgment, and on the faith of that assignment the plaintiff some time in September indorsed the company notes to $4000, and October 8 he indorsed the company note to $6000, including a renewal of the $4000. About the 1st of October, Hotailing was informed the plaintiff had been procured to indorse for the company, and of the security given. January 19, 1858, Mason and Johnson confessed a judgment to the plaintiff for $6110, the amount of his indorsements. The Ilion Bank, August 19, 1857, discounted for D. Mason & Co. their note, indorsed by Pruyn & King, for $1000; and Sept. 18, 1857, discounted for D. Mason & Co. another note of the same kind, and of the same amount. Oct. 8, 1857, D. Mason & Co. renewed those two notes by their note indorsed by Pruyn & King, for $2000. The $2000 note was protested, and the Ilion Bank, Feb. 8, 1858, recovered a judgment on that note against Mason, Johnson and Hotaling, for $2046.84. D. Mason & Co. and Johnson, Mason and Hotaling were each insolvent six months before January 11, 1858, and still are.

Upon these facts, the referee held as a matter of law, that the judgment in favor of Pruyn & King against Mason and Johnson alone was a lien on all the real estate in question, conveyed to and owned by Johnson, Mason and Hotaling. That the said judgment against Johnson, Mason and Hotaling took no interest in the real estate, before the other judgment. That the judgment against Johnson and Mason held Hotaling's interest in the land in preference to a subsequent judgment

against Hotaling, &c. From the judgment entered upon the report of the referee, the Bank of Central New York and the Ilion Bank appealed.

*E. J. Richardson,* for the appellants.

*F. Kernan,* for the respondent.

*By the Court,* PRATT, J. If necessary to the determination of this appeal, I should be inclined to hold the judgment in favor of Pruyn & King void, as not being authorized by the code. The contingent liability mentioned in the code, and to secure which a judgment by confession is authorized, is a liability already contracted and inchoate, such as the liability created by indorsement, guaranty or other suretiship. It was not, in my opinion, designed to be extended to contracts or liabilities thereafter to be created. But it is not necessary to decide this point, as the judgment in favor of Stevens, against which no such objections can be taken, was older than the judgments of the appellants. And I can perceive no reason why it is not as available to the plaintiff as the former. Both are judgments against two of three partners, to secure a partnership liability. And there is no stronger equity in the one than in the other, in favor of making it a lien upon the interest in the land of all three of the partners. It is said that Hotaling knew that the judgment was given to Pruyn & King to secure them for their indorsements for the firm, and that he knew of and assented to the assignment to the plaintiff to secure him for indorsing for the firm. But I find no evidence that he agreed or consented to its being made a lien upon his own interest in the premises. Although he knew of the judgment, and for what purpose it was given, he also knew that it was a legal lien only on the interest of the defendants, in the premises. I cannot, therefore, conceive how his knowledge of it, or his consent that the lien upon the shares of his partners should be transferred to the plaintiff to secure him, should have the effect to extend the lien to his own interest in the land.

Stevens *v.* Bank of Central New York.

The two judgments, therefore, in my opinion, conceding both to be valid, stand upon precisely the same footing, and secure to the plaintiff the same rights. The question then comes up, What are those rights? I assume that the judgment to the plaintiff was given to secure a partnership liability, and that the land was purchased for partnership uses and paid for with partnership funds. The plaintiff's judgment, since the order of Judge Allen striking out Hotaling's name as a defendant therein, is a judgment against two of these partners, and is prior in point of time to the judgments of the appellants, which were confessed by all of the defendants. The fund is to be treated precisely as if it had been the proceeds of the sale of the land upon all the judgments. Under these circumstances, the rights of the parties must be determined according to the legal priority and extent of the liens of all the parties. The suit was not brought to settle up the partnership concerns and distribute the assets. In such a case equality would be equity. But it is brought based upon the lien of the plaintiff, and to enforce it against the land, which has been converted into money. And that lien only extends to the interest of two of the partners. To that extent it should be limited. I cannot perceive how, upon any principles of equity, it can be extended beyond that. So far as the interest of Hotaling is concerned, the plaintiff's demand, if it is not merged in his judgment, is a mere contract debt, and can have no precedence, at least over the demands of the banks, if their demands had not been put in judgment. But having put them in judgment and thus acquired a lien upon the land, the appellants have acquired a preference over all creditors by simple contract.

But it is claimed, on the part of the appellants, that as their judgment is against the firm, and a lien upon the lands of the firm, it should have a preference over the judgments of individual creditors, although prior in point of time. There may be some question whether this would be true as an abstract proposition, (*Meech* v. *Allen*, 17 *N. Y. Rep.* 300;)

whether a court of equity could thus modify the legal effect of the lien which the statute gives. But in this case the equity upon which it is claimed that the priority of the judgment, which is first in point of time, should be postponed to give place to junior judgments, is met by a counter equity growing out of the fact that the plaintiff's judgment was given to secure a partnership liability; that if two thirds of the surplus money be applied upon that, it will be applied in extinguishing so much of the partnership liability. That liability is in nowise discharged by the judgment; for it was only given as a collateral security, and does not merge the debts held against the firm for which the plaintiff is liable. Thus this assumed equity on the part of the appellants being met by an equal equity on the part of the plaintiff, the rights of the parties must be determined by the priority of their legal liens. The result is that the plaintiff is entitled to two thirds of the funds, and the appellants to one third. The judgment must therefore be reversed, and a new trial granted, unless the parties consent to a modification of the judgment as above suggested. In such case it should be modified without costs of the appeal.

[Onondaga General Term, October 4, 1859. *Pratt, W. F. Allen* and *Mullin*, Justices.]